# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Cathey*, 2012 IL 111746

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ELRON CATHEY, Appellant. |
| Docket No. | 111746 |
| Filed | March 22, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where, after a failed self-defense claim as to which defendant testified, appellate counsel challenged the use of convictions to impeach but not the lack of a pretrial ruling thereon, a postconviction petition alleging his ineffectiveness arguably raised claims of deficiency and prejudice and should not have been summarily dismissed—aggravated battery with a firearm. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. John A. Wasilewski, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment reversed.<br>Cause remanded. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and David C. Holland, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Matthew Connors, Assistant State's Attorneys, of counsel), for the People. |
| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion. Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1      The defendant, Elron Cathey, filed a *pro se* postconviction petition in which he alleged he received ineffective assistance of counsel on direct appeal. According to the petition, counsel failed to argue that defendant's trial judge erred when the judge declined to rule on defendant's motion *in limine* to bar the use of prior convictions for impeachment purposes before defendant testified. The circuit court of Cook County summarily dismissed the postconviction petition and the appellate court affirmed. 406 Ill. App. 3d 503. For the reasons set forth below, we reverse the judgments of the appellate and circuit courts and remand the cause to the circuit court for further proceedings.

¶ 2                          BACKGROUND

¶ 3      Defendant was charged with attempted first degree murder and aggravated battery with a firearm in connection with the shooting of Maurice Sterling. Prior to trial, defense counsel filed a motion *in limine* which sought to prevent the State from using defendant's prior convictions for attempted murder and aggravated battery with a firearm for impeachment purposes. Counsel argued that any probative value of the prior convictions would be outweighed by their prejudicial effect under the balancing test set forth in *People v. Montgomery*, 47 Ill. 2d 510 (1971), because those convictions were identical to the charges in the present case, and further, because defendant was asserting self-defense, it was essential to obtain a ruling on the motion before defendant decided whether to testify:

> "any probative value [the prior convictions] may have is substantially outweighed by the prejudice to the defendant in that this is a shooting case and the crime is so similar. The prejudicial effect really hits home in this case because it determines whether or not really [defendant] is going to take the stand or not.

He is trying to allege a self-defense which becomes almost impossible if he doesn't take the stand in his own behalf, but my advice is if the Jury is informed about a prior aggravated battery with a firearm conviction and the attempted murder conviction revolving around a firearm that their ears would be closed to [defendant's] self-defense testimony and only open their eyes to the prior conviction and that I think that that's why we are considering this ruling of such a magnitude that if the Court allows them to get into that conviction then he has to not get on the witness stand and I don't think that's fair."

The trial judge declined to rule on defense counsel's motion before trial, stating:

"[P]art of the balancing test is if other witnesses are going to have convictions and their credibility is going to be judged on the basis of prior convictions, why shouldn't it be done for the defendant?

* * *

So I will give you some indication depending on how much impeachment is used on other witnesses and if it is used, if they have similar convictions or of a similar nature, then I think the effect is lessened. I can't make a decision right now, but at this point in time I am going to deny it; but I'm going to revisit the matter after I have heard all the evidence."

Thereafter, the matter proceeded to a jury trial, which was held in February 2006.

¶ 4 Brian Finley testified on behalf of the prosecution. Finley stated that on June 8, 2004, at approximately 10 p.m., he was at a friend's house watching a basketball game when his brother, Xavier, called. Xavier, who had been sitting on a porch with some friends and had seen defendant approach with a group of teenagers, said that defendant was trying to kill him and that Finley should come and get him. After receiving Xavier's call, Finley went to his house, took his mother's car, and picked up Maurice Sterling.

¶ 5 After picking up Sterling, Finley spotted defendant, whom he knew from the neighborhood, with a group of about four teenagers. Finley got out of the car and asked defendant where his brother was. Finley testified that he saw the other teenagers who were with defendant moving around and saw one of the teenagers hand something to defendant which was black and "real big." Sterling then yelled, "He got a gun." Finley and Sterling turned and ran back toward the car. Finley testified that, as Sterling was getting into the car through the passenger side door, there was a loud "pow" and Sterling jerked and fell into the car. Finley then grabbed Sterling, pulled him completely into the car, and drove off. In his testimony, Finley acknowledged that he pled guilty to a felony gun charge in 1998 and that he was currently facing contempt charges.

¶ 6 Maurice Sterling testified that he was shot in the head but that he did not remember anything about the incident.

¶ 7 James Johnson testified on behalf of defendant. Johnson was sitting on a porch when he saw a car pull up and someone get out. Johnson stated there was an argument and then "somebody got to tussling. They was like, kind of like arm wrestling or whatever, and the gun went off." Johnson immediately ran inside. Johnson testified that the argument only lasted for 7 to 10 seconds before the "tussling" started and that he never observed a gun, but

-3-

only heard a shot.

¶ 8   Defendant testified on his own behalf. Defendant stated that on June 8, 2004, at approximately 10:30 p.m., he was walking home when he saw a black car approach and two people jump out. Defendant later learned the two people were Brian Finley and Maurice Sterling. Defendant testified that Finley was talking "crazy," saying that someone was trying to do something to his brother. Defendant did not know Finley or his brother at that time and responded, "Man, what the fuck." Finley then pulled a revolver from the small of his back and said, "Don't run."

¶ 9   Defendant testified that he wrestled with Finley for the gun. Defendant got behind Finley and put his left hand on top of Finley's hand which was holding the gun. The two of them spun around about 180 degrees, at which point the gun went off. Defendant did not see a bullet strike anyone. Defendant stated that he then pushed Finley and ran home. Defendant's attorney did not elicit from defendant whether he had any prior convictions.

¶ 10   After defendant testified, the State sought to admit his prior conviction for possession of a controlled substance from 2002, and convictions for attempted first degree murder and aggravated battery with a firearm from 1992, arguing they were relevant and admissible to impeach defendant because defendant had an interest in fabricating his story. Defense counsel objected to the admission of the prior convictions, stating:

> "Judge, [ ] we hashed this out beforehand, and I—I felt like everything was absolutely clear. *** [B]asically what the implication of what the Court's prior ruling was, deferred ruling, which is that, [ ] at that point in time I fully intended on going at Brian Finley at possession of weapon and his propensities ***.
>
>   We made a—a strategic decision, at that point, Judge, whether it was to our benefit to leave Brian Finley alone on his prior gun possession case and any possible implications, because getting in that—one or two questions on that was seriously outweighed by then the Court saying that, okay, well you went into it with him, now they can go into his [defendant's]—go deeper into his background. I didn't ask one question of Brian Finley about a gun case. *** We specifically stayed away from it. Didn't imply it. Didn't go anywhere near it."

¶ 11   Defense counsel offered to allow the State to impeach defendant with his prior conviction for possession of a controlled substance, but argued that the other convictions were more prejudicial than probative. The court allowed the State to introduce defendant's prior convictions for possession of a controlled substance and aggravated battery with a firearm but ruled that the State could not introduce his attempted first degree murder conviction. In rebuttal closing argument, the State argued, "And what is defendant's interest or bias in trying to fabricate a story for you to believe? He was previously convicted of possession of a controlled substance, and, also, aggravated battery with a firearm. He has the most interest to concoct the story for you."

¶ 12   The jury acquitted defendant of attempted first degree murder but found him guilty of aggravated battery with a firearm. The circuit court sentenced defendant to 40 years' imprisonment.

¶ 13   On direct appeal, defendant was represented by the same attorney who represented him

at trial. Defendant's attorney argued that the State failed to prove defendant guilty beyond a reasonable doubt; that the trial court improperly admitted one of defendant's prior convictions because it was more prejudicial than probative under *Montgomery*; and defendant's sentence was excessive. The appellate court affirmed both defendant's conviction and sentence in an unpublished order on March 23, 2007. *People v. Cathey*, No. 1-06-0460 (2007) (unpublished order under Supreme Court Rule 23). This court denied leave to appeal.

¶ 14 On September 30, 2008, defendant filed the instant *pro se* postconviction petition. Defendant's *pro se* petition alleged, *inter alia*, that he was denied effective assistance of counsel because counsel failed to argue on appeal that defendant's trial judge erred when he delayed ruling on defendant's motion *in limine*. Defendant also averred that counsel told him that if the State's primary witness, Brian Finley, was not impeached with his prior conviction, then the judge would not allow the State to impeach defendant with his convictions. Further, according to defendant, he relied on counsel's erroneous advice in deciding to testify. Defendant also alleged that he was denied effective assistance of counsel because counsel failed to request a reckless conduct jury instruction.

¶ 15 The circuit court summarily dismissed defendant's petition. The appellate court affirmed, addressing and rejecting both of defendant's claims of ineffective assistance of counsel. 406 Ill. App. 3d 503. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 16                                             ANALYSIS

¶ 17 The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2006)) "provides a procedural mechanism in which a convicted criminal can assert 'that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both.' " *People v. Harris*, 224 Ill. 2d 115, 124 (2007) (quoting 725 ILCS 5/122-1(a) (West 2002)). A circuit court may summarily dismiss a postconviction petition if it determines that the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2006). A postconviction petition is considered frivolous or patently without merit only if it has no "arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). We review the trial court's order summarily dismissing a *pro se* postconviction petition *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 18                                   I. "*Patrick* Violation"

¶ 19 The appellate court began its analysis of defendant's appeal by stating the following:

"In this appeal, defendant first contends that the circuit court erred in dismissing his *pro se* petition as frivolous and patently without merit because he set forth the gist of a claim that the trial court violated his constitutional rights as set forth in *People v. Patrick*, 233 Ill. 2d 62 (2009), when it delayed ruling on his motion *in limine* to exclude evidence of his prior convictions, made pursuant to *People v. Montgomery*, 47 Ill. 2d 510 (1971), until after he had testified. *** In *Patrick*, 233 Ill. 2d at 69-73,

our supreme court held that a trial court's failure to rule on a motion *in limine* on the admissibility of prior convictions when it has sufficient information to do so constitutes an abuse of discretion and infringes on a defendant's right to testify in his own behalf." 406 Ill. App. 3d at 505-06.

The appellate court then went on to reject this claim, holding, *inter alia*, that *Patrick* does not apply retroactively to cases on collateral review. 406 Ill. App. 3d at 508-10.

¶ 20    Although the majority of the appellate court's opinion addressed whether defendant had properly raised a "*Patrick* violation," we have been unable to find any citation to *Patrick* in defendant's postconviction petition or any contention by defendant that a *Patrick* violation or *Patrick*-type violation may be raised for the first time on collateral review. As noted, defendant does allege that counsel was ineffective on direct appeal for not arguing that the trial judge erred when he delayed ruling on defendant's motion *in limine*. However, the *Patrick* claim addressed by the appellate court is not contained in defendant's petition.

¶ 21    As this court has stated, " '[t]he question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations *in the petition*, liberally construed and taken as true, are sufficient to invoke relief under the Act.' (Emphasis added.) Thus, any issues to be reviewed must be presented in the petition filed in the circuit court." *People v. Jones*, 211 Ill. 2d 140, 148 (2004) (quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1998)); see also, *e.g.*, *People v. Petrenko*, 237 Ill. 2d 490, 502 (2010). The appellate court below erroneously reached an issue that was not raised in defendant's postconviction petition. Accordingly, we vacate that portion of the appellate court's opinion which addressed the *Patrick* violation and held that *Patrick* does not apply retroactively to cases on collateral review.

¶ 22                    II. Ineffective Assistance of Counsel, Motion *in Limine*

¶ 23    Defendant's *pro se* petition alleged that counsel provided ineffective assistance on direct appeal because he failed to argue that the trial judge erred when he delayed ruling on defendant's motion *in limine*. Claims of ineffective assistance are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. At the first stage of proceedings under the Act, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17.

¶ 24                              A. *Deficient Performance*

¶ 25    The appellate court concluded that counsel's performance could not have been

unreasonable as a matter of law because *Patrick* was not decided until after defendant's direct appeal was complete. The appellate court explained: "*Patrick*, which announced a new constitutional rule of criminal procedure, was not decided until after the completion of defendant's trial and direct appeal, and we therefore conclude that counsel was not ineffective for failing to challenge the trial court's delay in ruling on his motion in defendant's posttrial motion for a new trial or on direct appeal." 406 Ill. App. 3d at 511.

¶ 26    The appellate court's analysis is misplaced. The inquiry is not simply when *Patrick* was decided. Rather, the relevant focus under *Strickland* is on the state of the law at the time of defendant's trial and appeal and whether a reasonable attorney should have challenged the trial court's delayed *Montgomery* ruling. For the following reasons, we hold that it is at least arguable that prevailing norms required a reasonable attorney to argue that the trial judge erred when he delayed ruling on defendant's motion *in limine*.

¶ 27    First, at the hearing on defendant's motion *in limine*, defense counsel argued that the timing of the trial court's decision was important because it affected whether defendant would testify. Counsel argued that it would be impossible for defendant to put forth his defense if he could not take the stand but, if his prior convictions were used to impeach him, counsel would recommend that defendant not take the stand. Counsel further emphasized that the judge's decision on the motion *in limine* was of "such magnitude" that it affected the fairness of defendant's trial. Thereafter, when the State sought to introduce defendant's prior convictions, defense counsel pointed out he believed the trial court's earlier ruling was that, if he did not impeach Finley with his prior convictions, the trial court would not allow the State to impeach defendant with his. Counsel argued that, if the court were to now allow the State to do so, defendant would suffer prejudice, which would render his trial unfair. Thus, defendant's counsel was clearly cognizant of the importance of the delayed-*Montgomery* issue and in obtaining a ruling so that defendant could make a decision regarding whether to testify. Nothing in the record suggests why, given counsel's own emphasis on the importance of the issue, it was not raised on appeal.

¶ 28    Further, during the time of defendant's trial and appeal, several appellate decisions addressed the issue of delaying a *Montgomery* ruling. For example, in *People v. Ballard*, 346 Ill. App. 3d 532, 544-45 (2004), the appellate court declined to grant the defendant a new trial because he had not testified, but concluded that "the [trial] court should have ruled and then defendant could meaningfully consider whether to exercise his right to testify." Numerous other cases were also filed in the appellate court raising this issue.[1] Authority from

---

[1] *People v. McGregory*, No. 1-06-1119 (Feb. 6, 2008) (unpublished order under Supreme Court Rule 23) (opening brief filed July 23, 2007); *People v. Tucker*, No. 1-06-2619 (May 12, 2008) (unpublished order under Supreme Court Rule 23) (opening brief filed September 26, 2007), *appeal allowed*, 231 Ill. 2d 684 (Mar. 25, 2009) (consolidated with *People v. Averett*, 237 Ill. 2d 1 (2010)); *People v. Averett*, 381 Ill. App. 3d 1001 (Mar. 31, 2008) (opening brief filed February 15, 2007), *aff'd*, 237 Ill. 2d 1 (2010); *People v. Byrd*, No. 1-05-1081 (Feb. 22, 2008) (unpublished order under Supreme Court Rule 23) (opening brief filed May 22, 2006); *People v. Williams*, No. 1-05-2629 (Feb. 15, 2008) (unpublished order under Supreme Court Rule 23) (opening brief filed December 5, 2006); *People v. Cowans*, No. 1-06-0947 (Jan. 16, 2008) (unpublished order under Supreme Court

other jurisdictions, which was later cited in our decision in *Patrick*, had also found error in not ruling on the admissibility of a defendant's prior conviction until after the defendant testifies. See, *e.g.*, *Settles v. State*, 584 So. 2d 1260 (Miss. 1991); *State v. McClure*, 692 P.2d 579 (Or. 1984); *State v. Ritchie*, 473 A.2d 1164 (Vt. 1984). Further, the appellate court's decision in *People v. Phillips*, 371 Ill. App. 3d 948 (2007), which held that a trial court abused its discretion in delaying ruling on a *Montgomery* issue, was filed on March 6, 2007, before the appellate court filed its decision in defendant's direct appeal.

¶ 29 Based on the defense counsel's awareness of the issue, and the fact that it was a frequently litigated matter of criminal law during the pendency of defendant's trial and direct appeal, we conclude it is at least arguable that counsel's failure to raise the issue of the delayed *Montgomery* ruling on appeal "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Accordingly, defendant's claim of ineffective assistance was not frivolous or patently without merit with respect to the deficient performance prong of *Strickland*.

¶ 30                                   B. *Prejudice*

¶ 31 Defendant maintains that he was prejudiced by counsel's failure to raise the delayed-*Montgomery*-ruling issue on appeal. Defendant notes that this court announced that the petitions for leave to appeal had been allowed in *Phillips* and *Patrick* several months before denying defendant's petition for leave to appeal from his direct appeal. Defendant maintains that, if the delayed-*Montgomery*-ruling issue had been raised in his direct appeal, then, regardless of who succeeded on the issue, either defendant's petition for leave to appeal or the State's petition for leave to appeal would have been granted or held in abeyance pending

Rule 23) (opening brief filed June 5, 2007); *People v. Wright*, No. 1-05-2892 (Dec. 28, 2007) (unpublished order under Supreme Court Rule 23) (opening brief filed May 17, 2007); *People v. Love*, No. 1-05-3935 (Dec. 4, 2007) (unpublished order under Supreme Court Rule 23) (opening brief filed July 12, 2007); *People v. Holloway*, No. 1-05-3439 (Nov. 30, 2007) (unpublished order under Supreme Court Rule 23) (opening brief filed May 23, 2007), *vacated*, 231 Ill. 2d 677 (Mar. 25, 2009) (supervisory order; for reconsideration in light of *Patrick*), *aff'd*, 398 Ill. App. 3d 317 (2009); *People v. Westbrook*, No. 1-06-0206 (Sept. 14, 2007) (unpublished order under Supreme Court Rule 23) (opening brief filed January 24, 2007); *People v. DeBerry*, 375 Ill. App. 3d 822 (2007) (opening brief filed December 29, 2006); *People v. Franklin*, No. 1-05-1213 (May 4, 2007) (unpublished order under Supreme Court Rule 23) (opening brief filed July 26, 2005); *People v. Walker*, No. 1-05-0356 (Mar. 22, 2007) (unpublished order under Supreme Court Rule 23) (opening brief filed July 18, 2006); *People v. Harvey*, No. 1-05-0943 (Nov. 27, 2006) (unpublished order under Supreme Court Rule 23) (opening brief filed April 25, 2006); *People v. Mitchell*, No. 1-04-3006 (Aug. 11, 2006) (unpublished order under Supreme Court Rule 23) (opening brief filed September 2, 2005); *People v. Smith*, No. 1-03-2631 (May 19, 2006) (unpublished order under Supreme Court Rule 23) (opening brief filed December 22, 2004); *People v. Summers*, No. 1-04-2163 (Feb. 10, 2006) (unpublished order under Supreme Court Rule 23) (opening brief filed April 24, 2005); *People v. Calixto*, No. 1-04-2201 (Jan. 30, 2006) (unpublished order under Supreme Court Rule 23) (opening brief filed June 21, 2005); *People v. Thomas*, No. 1-04-0283 (Nov. 10, 2005) (unpublished order under Supreme Court Rule 23) (opening brief filed November 18, 2004).

this court's decision in *Patrick*. Further, defendant argues that his case is similar to *Patrick* and, thus, he would have benefitted from this court's ruling in that case. The State, in its brief, does not respond to this argument. Given the facts as alleged by defendant, we conclude there is at least an arguable basis that defendant was prejudiced by counsel's failure to raise the delayed-*Montgomery*-ruling issue on appeal. Accordingly, defendant's postconviction claim of ineffective assistance was not frivolous or patently without merit with respect to the prejudice prong of *Strickland*.

¶ 32 Because defendant's claim of ineffective assistance of counsel with respect to the delayed-*Montgomery*-ruling issue is not frivolous or patently without merit, this matter must be remanded to the circuit court for further proceedings. In so holding, we note that our decision only entitles defendant to advance to the second stage of the postconviction proceedings, where he may be appointed counsel and submit an amended petition. See 725 ILCS 5/122-4, 122-5 (West 2006). We express no opinion on whether defendant will be able to meet the second-stage standard and proceed to an evidentiary hearing on his amended petition. See *People v. Edwards*, 197 Ill. 2d 239, 246-47 (2001) (a decision on whether petitioner has established a substantial showing of a constitutional violation is inappropriate at the summary dismissal stage of postconviction proceedings).

¶ 33 III. Ineffective Assistance of Counsel, Jury Instruction

¶ 34 Defendant's postconviction petition also contained an allegation that counsel was ineffective for failing to request a reckless conduct jury instruction. We need not address this issue. Partial summary dismissals are not permitted under the Post-Conviction Hearing Act. *People v. Rivera*, 198 Ill. 2d 364 (2001). Because we have concluded that defendant's petition sets forth a claim of ineffective assistance of counsel with respect to the delayed *Montgomery* ruling which survives summary dismissal, the entire petition must be remanded for further proceedings, regardless of the merits of any other claims. Further, because the appellate court erred in holding that defendant's claim of ineffective assistance regarding the *Montgomery* issue was subject to summary dismissal, the appellate court erred in addressing the ineffective assistance claim regarding the jury instruction—there was no need to reach that claim. Accordingly, we vacate that portion of the appellate court opinion which held that defendant's claim of ineffective assistance of counsel with respect to the jury instruction was frivolous or patently without merit.

¶ 35 CONCLUSION

¶ 36 For the foregoing reasons, we reverse the judgments of the appellate and circuit courts and remand this cause to the circuit court for further proceedings consistent with this decision.

¶ 37 Appellate court judgment reversed.

¶ 38 Circuit court judgment reversed.

¶ 39 Cause remanded.