2024 IL App (1st) 230990-U

No. 1-23-0990

Order filed August 30, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 13266 |
| | ) | |
| JOSEPH A. LACYNIAK, | ) | Honorable |
| | ) | Maria Kuriakos-Ciesil, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court properly summarily dismissed defendant's *pro se* postconviction petition where it did not state the gist of a constitutional claim.

¶ 2    Defendant Joseph A. Lacyniak appeals from the summary dismissal of his petition filed

pursuant to the Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)).[1] On

_____

[1]The indictment, direct appeal, and initial postconviction petition state Lacyniak's first name as "Joey." We use Lacyniak's full first name, which was used in the notice of appeal and prior collateral appeal.

appeal, Lacyniak contends that he raised an arguable claim that his trial counsel was ineffective for failing to properly present evidence of the victim's violent and jealous character to support Lacyniak's self-defense claim under *People v. Lynch*, 104 Ill. 2d 194 (1984). We affirm.[2]

¶ 3                                      I. BACKGROUND

¶ 4     Following a 2016 jury trial, Lacyniak was found guilty of the first degree murder of John Hughes and was sentenced to natural life imprisonment. The facts are detailed in this court's order on direct appeal. See *People v. Lacyniak*, 2021 IL App (1st) 170323-U. Accordingly, we recount only the facts necessary to resolve the present appeal.

¶ 5     In June 2012, Lacyniak was charged by indictment with two counts of the first degree murder of Hughes. Lacyniak raised the affirmative defense of self-defense.

¶ 6     At trial, evidence was adduced that early on June 18, 2012, Lacyniak fatally stabbed Hughes during a fight outside of Rocky's, a bar in Chicago. Earlier that night, Lacyniak attended a barbeque where Hughes and Roxanne Simenthal, who had an "on and off" romantic relationship, were also present.[3] Simenthal testified on behalf of the defense that she and Lacyniak twice had sex when she was "off" with Hughes.

¶ 7     At the barbeque, Lacyniak spilled a beer, which Simenthal began to clean, and Hughes became very angry in response. Lacyniak testified that Hughes "went through the ceiling" when Simenthal began to clean the spilled beer. Several witnesses testified that Hughes and Lacyniak "had words" regarding Simenthal, and two witnesses testified that Lacyniak displayed a firearm towards Hughes. Although accounts differed, the State adduced evidence that Lacyniak was asked

---

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[3]Simenthal testified that her last name was Homer at the time of trial.

to leave the barbeque.

¶ 8    Simenthal further testified that after Lacyniak left, Hughes "threw a tantrum" and was "being mean" to her. Simenthal testified that Hughes stated that he would "beat [Lacyniak's] ass." Simenthal was upset with Hughes and wanted to get away from him, so she and her daughter, who was a host of the barbeque, left the apartment to purchase beer. Simenthal acknowledged that, in her grand jury testimony, she denied that Hughes threatened Lacyniak.

¶ 9    Defense counsel asked Simenthal, "[H]ow would you characterize [Hughes's] behavior when he drank a lot?" The State objected. During a sidebar, the State argued that defense counsel never filed a *Lynch* motion regarding "any prior bad acts, [or] any violent conduct by the victim previously." The court sustained the objection and told defense counsel that the evidence elicited must be related to the "facts and circumstances surrounding the charges in this case and specifically the events of that day."

¶ 10   The following colloquy then occurred on the record:

> "[DEFENSE COUNSEL]: In particular, as to that particular night, June 17, 2012, when you're at the party, what was [Hughes's] behavior in terms of his alcoholic consumption?
> [SIMENTHAL]: Well, he—he gets—
> [THE STATE]: Objection.
>
> * * *
>
> [SIMENTHAL]: Well, he gets upset when he drinks. He gets a little violent.
> [THE STATE]: Objection.
> [SIMENTHAL]: He's a good guy if he's not drinking, though.
> THE COURT: Okay, that objection is sustained. The jury will disregard that response."

¶ 11   On redirect examination, defense counsel asked Simenthal whether Hughes was "a jealous

guy," and she responded affirmatively. The State objected, and the court sustained the objection and informed the jury to disregard the question and answer.

¶ 12    Additional evidence established that Simenthal spoke with Lacyniak by phone as she left the barbeque. Lacyniak invited her and her daughter to join him at Rocky's. They went to Rocky's and sat next to Lacyniak. A few minutes later, Hughes entered Rocky's and went to the other end of the bar. Lacyniak invited Hughes to join them, and he and Hughes discussed Simenthal. Lacyniak testified it was not an argument and characterized the conversation as Hughes "pleading his case." Simenthal and her daughter left the bar, but Hughes remained with Lacyniak. Surveillance footage from inside Rocky's depicts Hughes and Lacyniak conversing. Less than 15 minutes after he entered Rocky's, Hughes left the establishment. Lacyniak thereafter left and reengaged with Hughes outside Rocky's.

¶ 13    The exterior video depicts Hughes and Lacyniak on the sidewalk in front of Rocky's. They converse and eventually fight, although the video's time stamp at times obscures their upper bodies.

¶ 14    Lacyniak testified that Hughes informed him that he would "kill any mother*** who messes with Roxie," which Lacyniak understood as a threat. According to Lacyniak, Hughes punched him first, knocking a filling loose and cutting the inside of Lacyniak's mouth. Lacyniak punched Hughes four or five times, forcing him against the building's wall. According to Lacyniak, Hughes removed a knife from his pocket and attempted to open it, but Lacyniak was able to take the knife out of Hughes's hand. Lacyniak stated he did not want to fight Hughes, who continued to punch him. He could not recall when he stabbed Hughes because he was "reacting and not thinking."

¶ 15    Simenthal's daughter and her daughter's boyfriend observed the fight from their apartment

and ran downstairs to stop it. At that point, Hughes lifted his shirt to show that he was bleeding from the chest and stated that "he f*** stabbed me!" Lacyniak testified that he did not realize that Hughes had been stabbed until then. According to another guest of the barbeque, Lacyniak exclaimed, "Yeah, what now, n***," toward Hughes when they were separated. Simenthal's daughter testified that Lacyniak said he was "going to get a strap and take care of this," and she observed him "put something on the side of his waist." Lacyniak testified that he left when he saw an ambulance approaching but later surrendered to the police that same evening.

¶ 16    According to the medical examiner and autopsy photos, Hughes sustained two stab wounds to the upper chest on his left side. He also sustained several incise wounds to his forearms and across his outer right hand above the knuckles. The medical examiner determined that Hughes died from multiple stab wounds and that the manner of death was homicide. Hughes's blood alcohol level was .208.

¶ 17    The jury deliberated until late in the evening and chose to resume deliberations in the morning, with the jury foreperson stating in court that they were vigorously debating. The jury found Lacyniak guilty of first degree murder. As Lacyniak had a prior conviction for first degree murder, the court sentenced him to a mandatory term of natural life imprisonment.

¶ 18    On direct appeal, Lacyniak argued that (1) the State failed to prove that the killing was not justified under self-defense; (2) alternatively, the conviction should be reduced to second degree murder because he proved an unreasonable belief in self-defense or a sudden and intense provocation due to mutual combat; (3) the conviction should be reduced to involuntary manslaughter because the stabbing was reckless; and (4) the trial court erred by giving two jury instructions regarding an initial aggressor's use of force. We affirmed. *Lacyniak*, 2021 IL App (1st) 170323-U.

5

¶ 19    In finding the evidence sufficient to support first degree murder, we noted that Hughes participated in the fight, was angry about Lacyniak and Simenthal, and approached Lacyniak on the street prior to the fight. *Id*. ¶ 25. However, the evidence presented conflicting accounts regarding who was the initial aggressor, and it was clear Lacyniak was a willing combatant. *Id*. ¶¶ 25-30. Ultimately, we held that the jury was free to reject Lacyniak's version of events and could have found that Lacyniak's use of force was excessive, as the conflict was a fist fight between two men of comparable age, build, and size, and Lacyniak did not attempt to withdraw or make a truce but instead escalated the conflict by introducing a knife. *Id*. ¶ 26-31.

¶ 20    On September 12, 2022, Lacyniak filed an initial *pro se* postconviction petition, arguing that his trial counsel was ineffective for failing to (1) file a *Lynch* motion, (2) properly question Simenthal regarding Hughes's "violent and jealous character," and (3) present evidence of Hughes's "propensity for violence" in support of Lacyniak's theory that Hughes was the aggressor. The petition did not describe the nature of the unpresented evidence beyond the assertion that Hughes had a "violent and jealous character." Lacyniak attached an affidavit and excerpts from the trial transcript to his petition.

¶ 21    On December 2, 2022, the circuit court summarily dismissed the petition as frivolous and patently without merit. The court commented that Lacyniak failed to adequately state what specific *Lynch* evidence should have been raised in a motion and presented at trial. Thus, Lacyniak's claim that trial counsel was ineffective for failing to present said *Lynch* evidence was conclusory. Regardless, the court found that Lacyniak did not suffer prejudice, where the outcome of the trial likely would not have been different if the evidence had been presented to the jury.

¶ 22    On June 1, 2023, Lacyniak filed a motion seeking leave to file a late notice of appeal, which this court allowed.[4]

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, Lacyniak argues that the circuit court erred in summarily dismissing his postconviction petition, where he stated the gist of a constitutional claim that his trial counsel was ineffective for failing to properly present *Lynch* evidence in support of his theory of self-defense. According to Lacyniak, had trial counsel elicited testimony that Hughes "was a jealous individual who became violent when drunk," such evidence would support Lacyniak's self-defense claim that Hughes, who was legally intoxicated at the time of the incident, was the initial aggressor.

¶ 25    The Act provides a three-stage mechanism by which defendants may collaterally challenge their convictions based on alleged violations of constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2022); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). The circuit court dismissed Lacyniak's petition at the first stage of proceedings. At the first stage, the circuit court must independently review the petition, taking the allegations as true, and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous or patently without merit if it has no arguable basis in law or fact and is instead based on a meritless legal theory or fanciful factual allegations. *People v. Hodges*, 234 Ill. 2d 1, 11-13, 16 (2009). A meritless legal theory is one that is completely contradicted by the record. *People v. White*, 2014 IL App (1st) 130007, ¶ 18. Fanciful factual allegations "include those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 17.

---

[4]On June 7, 2023, Lacyniak filed a motion seeking leave to file a successive postconviction petition, which was denied. We affirmed and granted appointed counsel leave to withdraw as counsel on appeal. *People v. Lacyniak*, No. 1-23-1259 (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 26     The petition need only present a limited amount of detail and need not set forth the claim in its entirety. *Edwards*, 197 Ill. 2d at 244. Although a *pro se* petitioner need only set forth the gist of a constitutional claim, this low threshold does not excuse the petitioner from providing any factual detail regarding the alleged constitutional violation. *Hodges*, 234 Ill. 2d at 10. " '[W]hile a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent.' " *Id.* at 9 (quoting *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008)). Unsupported allegations in a postconviction petition are frivolous and patently without merit. *People v. Collins*, 202 Ill. 2d 59, 68-69 (2002). Our review of the summary dismissal of a postconviction petition is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 27     To state a viable claim of ineffective assistance of counsel, a defendant must demonstrate that it is arguable that (1) counsel's performance " 'fell below an objective standard of reasonableness' " and (2) the defendant was prejudiced by counsel's deficient performance. *Id.* at 17 (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). More specifically, a defendant must show that it is arguable "counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland*, 466 U.S. at 694).

¶ 28     "Trial counsel has a duty to conduct both factual and legal investigations on behalf of [their client]." *People v. Montgomery*, 327 Ill. App. 3d 180, 185 (2001). Whether a trial counsel's failure to investigate amounts to ineffectiveness "is determined by the value of the evidence which was not presented at trial and the closeness of the evidence that was presented." *Id*.

¶ 29    In *Lynch*, our supreme court established that when a defendant raises a theory of self-defense, "the victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence, regardless of when he learned it." *Lynch*, 104 Ill. 2d at 200. Accordingly, under *Lynch*, evidence of the victim's violent and aggressive character may be offered (1) to show that the defendant's knowledge of the victim's violent inclinations affected his or her perception of, and reaction to, the victim's behavior, or (2) to support the defendant's version of the facts when conflicting accounts of what occurred exist. *People v. Salas*, 2011 IL App (1st) 091880, ¶ 94.

¶ 30    As an initial matter, Lacyniak's claim that his trial counsel was ineffective for failing to file a *Lynch* motion and present evidence of Hughes's jealous and violent character relies entirely on matters contained within the record. Namely, Lacyniak relies on Simenthal's stricken testimony that Hughes became "violent" when he drank and that he was "a jealous guy." Thus, this issue could have been raised on direct appeal and is forfeited. See *People v. Veach*, 2017 IL 120649, ¶ 47 ("[A] defendant must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim," and "issues that could have been raised and considered on direct review are deemed procedurally defaulted."). Nor did Lacyniak frame his claim as ineffective assistance of appellate counsel for failing to raise the issue on direct appeal. See *People v. English*, 2013 IL 112890, ¶ 22 ("[T]he doctrines of *res judicata* and forfeiture are relaxed where fundamental fairness so requires, where the forfeiture stems from the ineffective assistance of appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record.").

¶ 31    Forfeiture aside, however, Lacyniak has not established that he was arguably prejudiced by his trial counsel's failure to present *Lynch* evidence. Even accepting Lacyniak's claim that

Simenthal's purported testimony would have been proper *Lynch* evidence, such evidence would likely not have altered the outcome of the trial if presented to the jury.

¶ 32    First, the jury could have concluded, based on the evidence admitted at trial, that Hughes became jealous and violent regarding Lacyniak's former sexual relationship with Simenthal. The record establishes that Hughes was angry and "threw a tantrum" when Simenthal cleaned a beer that Lacyniak spilled. Hughes and Lacyniak spoke that night about Simenthal and engaged in mutual combat outside the bar, and Hughes had a blood alcohol level of .208. Even without testimony that Hughes became violent and jealous when intoxicated, the jury could have inferred that Hughes had such a character based on the events of the evening. Consequently, defense counsel's failure to file a *Lynch* motion or argue the admissibility of Simenthal's testimony would not have affected the outcome of the trial, and Lacyniak was not arguably prejudiced by trial counsel's actions. See *Cathey*, 2012 IL 111746, ¶ 23.

¶ 33    Second, as previously noted, the evidence was sufficient to demonstrate that Lacyniak's killing of Hughes was not justified by self-defense. See *Lacyniak*, 2021 IL App (1st) 170323-U, ¶ 36. Lacyniak's claim that Hughes was "violent" and "jealous" when intoxicated, taken as true, does not confirm that Hughes was the initial aggressor or produced the knife. The video establishes that Hughes engaged in a fist fight with Lacyniak, who entered that combat freely. See *id*. ¶ 30. Even if Hughes "punched first," Lacyniak's self-defense claim was undermined by his status as a willing combatant. See *id*. As noted, it was within the jury's province to consider whether Hughes was jealous and violent, given his reaction to Lacyniak at the barbeque and their subsequent fist fight outside Rocky's. However, the jury ultimately rejected Lacyniak's self-defense claim.

¶ 34    Additionally, if we were to construe Lacyniak's claim that Hughes was "violent" and "jealous" when intoxicated as evidence supporting his testimony that Hughes produced the knife,

the record nonetheless establishes that Lacyniak disarmed Hughes. See *id.* ¶ 29 ("The use of deadly force is not justified where the victim, even though initially the aggressor, has been disarmed.").

¶ 35    In sum, Lacyniak has failed to assert any specific facts regarding Hughes's violent and jealous character which support Lacyniak's assertion that he was justified in using deadly force. Accordingly, there is no reasonable probability that, had this evidence been presented to the jury, the result of the trial would have been different. See *Cathey*, 2012 IL 111746, ¶ 23.

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.