2025 IL App (1st) 230814-U

No. 1-23-0814

Order filed March 19, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 28243 |
| | ) | |
| MAURICE MURRAY, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Martin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's denial of leave to file a successive postconviction petition is reversed and remanded where defendant set forth a colorable claim of actual innocence.

¶ 2    Defendant Maurice Murray appeals the denial of his motion for leave to file a successive postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). On appeal, defendant asserts that he set forth a meritorious claim of actual innocence based on affidavits from three newly discovered witnesses asserting that he was not the

shooter. Defendant also alleges that the circuit court made improper credibility determinations when it denied his motion. We reverse and remand for second-stage postconviction proceedings.

¶ 3    Following a jury trial, defendant was convicted of the first degree murder of Will Smith and aggravated battery with a firearm against James Taylor, and was sentenced to consecutive prison terms of 60 years and 30 years, respectively.

¶ 4    As the facts have been detailed in prior dispositions, we set forth only the background necessary to resolve the instant appeal.

¶ 5    Seth Richardson testified that on the evening of October 10 into the early hours of October 11, 2000, he spoke with Smith and Taylor, who were seated in Smith's vehicle at 78th Street and Dobson Avenue in Chicago. Richardson then went inside his grandmother's house across the street and heard two gunshots. Through the front window, he saw defendant, whom he had known for six years, standing at the driver's side window of Smith's vehicle. Defendant's back was to Richardson. Richardson recognized defendant because Richardson had seen defendant in the same clothes earlier that day. Another individual, Maurice Williams, walked to the passenger's side of the vehicle. Defendant shot Smith, who was in the driver's seat, and Williams shot Taylor, who was in the front passenger seat.[1]

¶ 6    Romelle Wetzel, who was inside the house with Richardson, testified that he heard gunshots. Through the window, he observed defendant and Williams running from the vehicle that Smith and Taylor were in, each holding a firearm. He did not see the shooters' faces until they ran. Wetzel had seen defendant and Williams in the neighborhood for several years.

---

[1] Williams is not a party to this appeal.

¶ 7 Taylor testified that he fell asleep in Smith's vehicle after drinking and smoking marijuana with Richardson and Smith. He woke to the sound of gunshots and saw defendant and Williams running towards the vehicle holding firearms. Williams shot at Taylor through the passenger window of the vehicle. Taylor ducked and, when he rose, he saw that Smith was dead. Taylor had known defendant and Williams for about six years and saw them every day in the neighborhood.

¶ 8 Richardson, Wetzel, and Taylor all identified defendant as a shooter in a lineup and at trial. Linda Yborra, a forensic scientist, testified that 17 fired cartridges recovered from the scene were from the same .45-caliber semiautomatic firearm. She tested other fired bullets recovered from the scene but was unable to determine whether they came from the same firearm. She could not conclusively determine whether more than one firearm was used.

¶ 9 The jury found defendant guilty of the first degree murder of Smith and aggravated battery with a firearm of Taylor. Defendant was sentenced to consecutive prison terms of 60 years and 30 years, respectively.

¶ 10 On direct appeal, we affirmed over defendant's contentions that the trial court erred in denying his motion pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), and that he had been prejudiced by the State's remarks in closing arguments. See *People v. Murray*, No. 1-04-2016 (2005) (unpublished order under Supreme Court Rule 23).

¶ 11 Defendant filed a *pro se* postconviction petition in 2006, which the circuit court summarily dismissed. We modified the fees assessed and otherwise affirmed. *People v. Murray*, 1-06-3662 (2008) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Defendant also filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)). The circuit court denied defendant's petition, and this court

affirmed. *People v. Murray*, 1-10-2845 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 12    On December 3, 2019, defendant filed *pro se* a motion for leave to file a successive postconviction petition and the corresponding proposed successive petition at issue here, asserting actual innocence.

¶ 13    On January 5, 2023, through retained counsel, defendant filed a supplemental motion and corresponding successive petition, asserting actual innocence based on newly discovered evidence. The new evidence comprised three affidavits asserting that defendant was not the shooter. In his motion, defendant maintained that he had no way of discovering the witnesses prior to trial, as defendant was not present at the scene of the shooting, and the witnesses had not been known at the time of trial nor were they mentioned in any police reports.

¶ 14    Kaizmen Jackson averred that he killed Smith.[2] According to Jackson, he had been "driving around for weeks" looking for Taylor, who had robbed him a few weeks earlier. In October 2000, when he spotted Taylor's blue vehicle, he "[g]rabbed [his] rifle *** ran up to the passenger side and open[ed] fire on the car." Jackson averred that he did not intend to kill Smith and was trying to kill Taylor. Jackson was alone during the offense. He was "willing to *** take any legal remedy to clear" defendant and Williams "of any wrongdoing."

¶ 15    Affidavits from Christina Kinard and Shevonne Palmer state that they were walking with Juton Cocroft on 79th Street and Dobson early on October 11, 2000. They witnessed a dark-skinned man, about 5'9" in height and dressed in black, shooting "a long gun" into a dark colored vehicle. The three ran to Cocroft's house and were "really scared," so Cocroft's brother drove

---

[2] The affidavit documents indicated that Jackson was incarcerated when the affidavit was executed.

them home. According to Kinard, later that morning, Palmer told her that an occupant in the vehicle had been killed in the shooting, and people were saying that defendant and Williams were the shooters. Kinard and Palmer knew "neither of those guys were [*sic*] the shooter that night." Palmer tried convincing Kinard and Cocroft, who was Smith's neighbor, to speak to police, but they were scared. Kinard and Palmer averred they were coming forward now because defendant and Williams were not the shooters and are innocent. Palmer averred that she "want[ed] to clear my conscience so I have chosen to come forward with the information I have held for so many years."

¶ 16    The court denied the motion for leave to file a successive petition. In announcing its decision, the court noted defendant "has found somebody that says that they are the solo offenders [*sic*] on the crime" and that individual, Jackson, is "also in the penitentiary and may not have much to lose." The affidavits of Kinard and Palmer were "very, very extremely troublingly bare bones," "wholly lacking," and said nothing except "a very stark conclusion" that defendant "wasn't the shooter." The court had "zero confidence that we have anything to do going forward."

¶ 17    Counsel filed a motion to reconsider. At the hearing on the motion, counsel argued that it was improper for the court to make a credibility determination at the leave-to-file stage. The court remarked that the affidavits were "woefully inadequate, with no detail whatsoever," and "with that bare bone bit of information was not going to change anybody's view." While affidavits could be constructed with specificity "to say how [affiants] knew what they knew in some detail," the affidavits offered were "so woefully lacking in detail it wasn't going anywhere." The court denied the motion to reconsider.

¶ 18 On appeal, defendant asserts that the affidavits of Jackson, Kinard, and Palmer support a colorable claim of actual innocence and that the circuit court made improper credibility findings at the leave-to-file stage.

¶ 19 The Act provides a three-stage method for persons under criminal sentence to assert that their convictions resulted from a substantial denial of their constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). The Act allows for a defendant to file one postconviction petition without leave of the court. 725 ILCS 5/122-1(f) (West 2022). Claims not included in the original or amended petition are waived. 725 ILCS 5/122-3 (West 2022). However, the procedural bar against successive proceedings will be relaxed where the defendant (1) can establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding or (2) shows a "fundamental miscarriage of justice" based on actual innocence.

¶ 20 Here, defendant sought leave to file a successive petition asserting actual innocence based on newly discovered evidence. The circuit court should deny leave to file only where, as a matter of law, the petition and supporting documentation cannot show a "colorable claim of actual innocence." *People v. Taliani*, 2021 IL 125891, ¶ 52. A colorable claim of actual innocence is one where the defendant's "supporting documentation raises the probability that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *People v. Edwards*, 2012 IL 111711, ¶ 24 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). We review *de novo* the denial of leave to file a successive petition alleging actual innocence. *People v. Robinson*, 2020 IL 123849, ¶ 39.

¶ 21    The evidence supporting a claim of actual innocence must be (1) newly discovered, (2) material and not merely cumulative of the trial evidence, and (3) of such conclusive character that it would probably change the result on retrial. *Taliani¸* 2021 IL 125891, ¶ 58.

¶ 22    The State concedes, and we agree, that the evidence in the three affidavits is material and noncumulative. See *Robinson*, 2020 IL 123849, ¶ 47 (evidence is material when it is relevant and probative of the petitioner's innocence, and noncumulative when it adds to the evidence presented at trial). Here, the affidavits of Jackson, Kinard, and Palmer are material as they reflect that defendant was not the shooter. Additionally, this evidence is noncumulative as it contradicts the trial evidence in stating that there was only one shooter. The State contends, however, that the evidence was neither newly discovered nor of such conclusive character as to probably lead to a different result. We must therefore resolve whether the affidavits supporting defendant's actual innocence claim were newly discovered and conclusive.

¶ 23    "Newly discovered evidence is evidence that was discovered after trial and that the defendant could not have discovered earlier through the exercise of due diligence." *Id*. Evidence is conclusive when, considered with the trial evidence, it would likely have led to a different outcome. *Id*. The conclusive character of the new evidence is the most important element of an actual innocence claim. *Id.* Ultimately, the inquiry is whether the new evidence "places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 48. "Probability, rather than certainty, is the key" in determining whether the finder of fact "would reach a different result after considering the prior evidence along with the new evidence." *Id.*

¶ 24  At the leave-to-file stage, the focus is not whether the new evidence is inconsistent with the evidence presented at trial. *Id.* ¶ 60. Instead, in determining the conclusiveness of the new evidence, "the well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity," *i.e.*, "where it is affirmatively and incontestably demonstrated to be false or impossible." *Id*. At the leave-to-file stage, the circuit court is precluded from making factual findings or determinations about the credibility of the supporting evidence. *Id*. ¶¶ 45, 61. These findings are only to be made at a third-stage evidentiary hearing. *Id*. ¶ 61.

¶ 25  Turning to the newly discovered element, we find that the affidavits of Jackson, Kinard, and Palmer were newly discovered. Kinard and Palmer asserted defendant's innocence and explained their failure to speak up earlier, *i.e.*, that they were scared. Similarly, Jackson's assertion that he was the lone shooter could not have been discoverable short of his own self-incriminating admission. Therefore, there would have been no way for defendant to have known that Jackson was the actual shooter or to have known about the other eyewitnesses, Palmer and Kinard, who were not named as witnesses or in a police report. As such, the affidavits of Jackson, Kinard, and Palmer are newly discovered evidence.

¶ 26  We also find that the affidavits of Kinard, Palmer, and Jackson were conclusive. Both Kinard and Palmer averred that they witnessed the shooting and knew that defendant was not the shooter. At this stage, we must take their statements as true unless rebutted by the record. *People v. Wilson*, 2022 IL App (1st) 192048, ¶ 75. Our supreme court has explained that "recognizing the existence of a conflict with the trial evidence is not the same as finding that the new evidence is positively rebutted." *Robinson*, 2020 IL 123849, ¶ 60. If the jury were to believe Kinard and

Palmer, the evidence would establish that defendant was not the shooter. As a result, Kinard's and Palmer's affidavits support defendant's actual innocence claim as the evidence was newly discovered, material, noncumulative, and conclusive.

¶ 27 As to Jackson, his affidavit was also conclusive. Nothing in the record presents objective, irrefutable evidence to rebut Jackson's admission that he was the shooter. Jackson's affidavit is not positively rebutted solely because there was conflicting evidence at trial that defendant was the shooter. *Robinson*, 2020 IL 123849, ¶ 60. At most, Jackson's affidavit conflicts with testimony regarding the number of shooters present. At this stage, accepting Jackson's claim that he was the sole shooter, Jackson's affidavit supports defendant's colorable claim of actual innocence where it was newly discovered, material, noncumulative, and conclusive.

¶ 28 Nonetheless, the State argues the affidavits cannot be considered newly discovered because defendant provided no information for the circuit court to assess whether he could have obtained the affidavits earlier through due diligence. However, the affidavits were from individuals not previously known to defendant. Kinard and Palmer averred that they fled the scene and explained that they "were really scared." They were never questioned by police or identified as possible witnesses. Similarly, Jackson's affidavit stated that Jackson shot Smith because Jackson had a personal issue with Smith, and that Jackson acted alone. Defendant maintains that he was never at the scene and therefore could not have identified witnesses. No amount of due diligence could have forced unknown and unobserved witnesses to come forth. See *People v. Anderson*, 2021 IL App (1st) 200040, ¶ 63 (newly discovered affidavits of witnesses who previously did not want to be involved were sufficient to establish an actual innocence claim at the first stage).

¶ 29    As to conclusiveness, the State argues that the affidavits of Kinard and Palmer lack sufficient details to change the outcome when considered in light of the trial evidence and, further, Kinard and Palmer provide no facts for the court to determine whether they had an independent basis for concluding that defendant was not the shooter. For that same reason, the State asserts that those affidavits provide little corroborative value to Jackson's affidavit. However, at this stage, the court must review the new evidence in the context of all the evidence adduced at trial. *People v. Class*, 2023 IL App (1st) 200903, ¶¶ 81-82. Here, the affidavits of Jackson, Palmer, and Kinard all assert that defendant was not the shooter, and Jackson's affidavit also states that he was the shooter and gives a motive for the shooting. As such, taken as true, the affidavits place the trial evidence in a different light and undermine the court's confidence in the finding of guilt. *Robinson*, 2020 IL 123849, ¶ 48.

¶ 30    As to Jackson's affidavit, the State contends that his affidavit was not conclusive because there was no evidence at trial that a rifle had been used during the shooting or that his rifle used .45-caliber ammunition as was recovered at the scene. The only forensic evidence tied to the shooter were cartridges and bullets from the scene. Of those, 17 cartridges were identified to be from the same firearm. There was no conclusive evidence regarding the source of the bullets recovered, or the number of shooters. The ammunition that Jackson's firearm used requires a factual determination, which cannot be made at the leave-to-file stage. See *People v. Coleman*, 183 Ill. 2d 366, 381 (1998) (the circuit court does not engage in fact finding at the first stage; all well pleaded facts are to be taken as true).

¶ 31    In sum, the standard for alleging a colorable claim of actual innocence is a "low threshold." *Robinson*, 2020 IL 123849, ¶ 58. The circuit court is "limited to determining whether the petitioner

has satisfied the applicable test to enable him to file his successive petition." *People v. Griffin*, 2024 IL 128587, ¶ 40. In making that determination, the court "considers only whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial," and the court is prohibited from making credibility determinations. *Id.* Taking the evidence presented at trial along with the proposed testimony, if believed, defendant satisfied the "low threshold" at the leave-to-file stage for alleging a colorable claim of actual innocence.

¶ 32    Finally, Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) permits a reviewing court, at its discretion, to grant relief that a particular case may require, including reassigning a matter to a different judge on remand. *Eychaner v. Gross*, 202 Ill. 2d 228, 279 (2002). Defendant requests we do so where the court's comments, including that Jackson "may not have much to lose," and that Kinard's and Palmer's affidavits were "troublingly bare bones" and "wholly lacking," suggest that it engaged in credibility determinations at the leave-to-file stage. Since the circuit court judge in this matter has retired and is no longer a member of the judiciary, there is no need to address the request to have another judge hear this case; the matter automatically will be reassigned to another judge.

¶ 33    For the foregoing reasons, the judgment of the circuit court is reversed. The case is remanded for second-stage proceedings on defendant's actual innocence claim.

¶ 34    Reversed and remanded.